IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARILYN FORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:05-CV-1676-D |
| VS. | § | |
| | § | |
| CITY OF DALLAS, TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Marilyn Ford ("Ford")——a Seventh Day Adventist and former employee of defendant City of Dallas ("City")——sues the City for religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. She contends the City intentionally discriminated against her by failing to reasonably accommodate her religious beliefs, which prohibit her from working on the Sabbath, resulting in her termination. The City moves for summary judgment, and the court denies the motion.[1]

I

Title VII imposes on an employer the obligation to make reasonable accommodation for the religious observances of its employees, but is not required in doing so to incur undue hardship. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 n.1 (1986);

_____

[1]This memorandum opinion is being written for the parties, to decide the City's summary judgment motion, and not for inclusion in a reporter. The court has therefore omitted a discussion of the background facts and procedural history, except to the extent necessary to the parties' understanding of the decision.

*Eversley v. MBank Dallas*, 843 F.2d 172, 175 (5th Cir. 1988). "Undue hardship" exists as a matter of law when an employer is required to bear a more than *de minimis* cost. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977); *Weber v. Roadway Exp., Inc.,* 199 F.3d 270, 273 (5th Cir. 2000); *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982).

To establish a prima facie case of religious discrimination under Title VII, a plaintiff must demonstrate that (1) she had a bona fide religious belief that conflicted with an employment requirement, (2) she informed the employer of her belief, and (3) she was discharged for failing to comply with the conflicting employment requirement. *Brener*, 671 F.2d at 144. The City does not contest that Ford has established a prima facie case. The burden therefore shifts to the City to show that it was unable to reasonably accommodate Ford's religious beliefs without incurring "undue hardship." *See, e.g., Brener*, 671 F.2d at 144; *Turpen v. Mo.-Kan.-Tex. R.R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984). The City will bear the burden of proving at trial that it has met its accommodation obligation under 42 U.S.C. § 2000e(j).

Because the City will have this burden at trial, to obtain summary judgment, it "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780

F.2d 1190, 1194 (5th Cir. 1986)).   This means that it must demonstrate, without genuine and material factual dispute, and as a matter of law, that it was unable to reasonably accommodate Ford's religious beliefs without incurring undue hardship.   An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> The range of acceptable accommodation under Title VII moderates the conflicting interests of both the employee and the employer: (1) it protects the employee by requiring that the accommodation offered be "reasonable;" and (2) it protects the employer by not requiring any accommodation which would impose an "undue hardship."

*EEOC v. Universal Mfg. Corp.*, 914 F.2d 71, 73 (5th Cir. 1990) (per curiam) (citations omitted).   The question of "reasonableness" under § 701(j) of Title VII

> seems to focus more upon the cost to the employer, the extent of positive involvement which the employer must exercise, and the existence of overt discrimination by the employer.   For example, both unpaid leave and voluntary rather than mandatory shift swaps ordinarily would be reasonable; but discriminating between religious and non-religious paid personal leave would not.

*Id.* at n.3 (citations omitted). Although the burden to accommodate generally rests with the employer, "the employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by the employer." *Brener*, 671 F.2d at 146; *see also*

- 3 -

*Ansonia Bd. of Educ.*, 479 U.S. at 69 (citing *Brener*, at 145-46) ("bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business."). Moreover, if "[o]ffered a [reasonable] accommodation . . . the employee cannot insist upon a specific or more beneficial one. Nor must an employer offer one." *Universal Mfg. Corp.,* 914 F.2d at 73.

II

The City presents essentially two interrelated but distinct strains of argument in support of its motion. The first is that the existence of undue hardship obviated the necessity of making *any* specific accommodations for Ford. The second concerns the reasonableness of the City's so-called preexisting accommodations, and relies in part on Ford's alleged failures to accommodate herself.

A

The City contends that because all conceivable accommodations would have resulted in undue hardship, it need not have accommodated Ford's religious beliefs. *See Ansonia Bd. of Educ.*, 479 U.S. at 67 (citing *Hardison*, 432 U.S. at 84); *Weber*, 199 F.3d at 275. In this context, the court is not required to assess the reasonableness of the City's efforts, but instead to focus on whether the City has carried its burden of showing that all conceivable accommodations would have imposed a more than *de*

- 4 -

*minimis* cost.  *See, e.g.*, *Ansonia Bd. of Educ.*, 479 U.S. at 63. The City has not carried this burden.

Relying on *Brener*, the City essentially argues that creating an entirely new position for Ford would have imposed a more than *de minimis* cost on the City by requiring it to hire two employees, where only one was needed.  In *Brener* the Fifth Circuit held that hiring a substitute employee in order to permit the plaintiff to observe the Sabbath "plainly would involve a more than *de minimis* cost."  *Brener*, 671 F.2d at 146.  Although this court acknowledges that the creation of a new position is likely to impose more than a *de minimis* cost in many cases, it will not on that basis relieve the City of its burden as the summary judgment movant to make this showing beyond peradventure.  The City has failed to adduce *any* evidence that creating a new position for Ford would have involved a more than *de minimis* cost.  It simply asks the court to conclude as much based on an unsubstantiated assertion.[2]  *See* D. Br. 17 ("Clearly the creation of a new, salaried position would impose more than a *de minimis* cost.").  This the court cannot do.  *See Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996) (holding that "unsubstantiated assertions are not competent summary judgment evidence").  The

---

[2]*Brener* dealt with the cost of hiring a substitute employee; it does not stand for the proposition that, in all cases, the creation of a new position for an employee will involve more than a *de minimis* cost.  *See Brener*, 671 F.2d at 146.

court is therefore unable to conclude that the City has met its burden of establishing beyond peradventure that *any* accommodation would have involved an undue hardship.  As a result, the court need not address the City's argument that the other accommodations Ford requested would have required the City to incur undue hardship.

B

Because the City has failed to meet its burden of showing that it was not required to make accommodations for Ford (because any accommodation would have involved undue hardship), the court must consider whether the City has established beyond peradventure that the accommodations it *did make* were reasonable and satisfied its statutory obligation.  In this context, the court is not concerned with the question of undue hardship *per se*, but with the reasonableness of the City's attempts to accommodate Ford's religious beliefs.  In other words, because the City has failed to establish its claim that *any* accommodation would have imposed an undue hardship, the City must establish beyond peradventure that it has met its good-faith obligation to reasonably accommodate Ford's religious observance.  If the City demonstrates that it made a reasonable accommodation, it need not show that Ford's preferred alternative accommodations would have resulted in undue hardship. *Eversley*, 843 F.2d at 176 (citing *Ansonia Bd. of Educ.*, 479 U.S. at 68); *Universal Mfg. Corp.*, 914 F.2d at 72-73.

The City has not met this burden.  The City argues that its

- 6 -

preexisting practices constitute a reasonable accommodation. It appears to rely on evidence that it provides for "flexible vacation leave" and a "reduced weekend work force," and proof that Ford accrued vacation leave at a rate of 7.2 hours biweekly.[3] The City also alleges that Ford received a lump sum payment for 59.6 hours of vacation leave at the time of her discharge, although it fails to point to evidence that supports this assertion. Additionally, the City makes unsubstantiated assertions that Ford would have been eligible for an Inspector II-level position on a Monday through Friday schedule at the end of her one-year probationary term, and that she was at all times eligible to use the City's existing internal job application process to seek a position outside the Code Compliance Department. Relying on *Bruff v. North Mississippi Health Services, Inc.*, 244 F.3d 495, 502 (5th Cir. 2001), the City also posits that it fulfilled its accommodation obligation by affording Ford at least 21 days in which to find another position or notify the City that she needed more time to do so.[4] If the City had established that any one of these accommodations, taken

---

[3]The cited deposition excerpt is indirect evidence of a vacation leave policy, but the City does not point to evidence showing that the policy is "flexible."

[4]The City is referring to the 21-day period between Ford's alleged return to work on February 28, 2005 and her termination on March 20, 2005. According to Ford, she was only given 19 days from the date of her reinstatement on March 1, 2005 to her termination on March 20. For the reasons discussed, the court holds that the City's arguments fail, even assuming a 21-day period.

alone or in combination with the others, was reasonable as a matter of law, it would be entitled to summary judgment.  *See Eversley*, 843 F.2d at 176 (citing *Ansonia Bd. of Educ.*, 479 U.S. at 68).  But the City has not met this burden.

The City correctly points out that "an employer's reasonable accommodation of an employee's religious observances need not be initiated in response to the employee's protest." *Brener*, 671 F.2d at 145 n.2 (citing *Hardison*, 432 U.S. 63, and *Howard v. Haverty Furniture Co.*, 615 F.2d 203 (5th Cir. 1980)).  The court is therefore permitted as a matter of law to consider whether the City's putative preexisting accommodations are sufficient to enable the City to meet its statutory obligation.  But the court is not required to comb the summary judgment record in search of evidence to support the City's position.  And the court will only consider the reasonableness of those putative accommodations for which the City offers evidentiary support.

The City only adduces evidence of its reduced weekend work force, internal job application process, and evidence that Ford accrued vacation leave at the rate of 7.2 hours biweekly and that the City afforded her at least 21 days in which to find a position in another City department or request more time to do so.  The City has not established beyond peradventure that the mere existence of a reduced weekend workforce is sufficient to satisfy its statutory obligation to reasonably accommodate an employee's religious

observance.[5]   Accordingly, the court is unable to hold that the mere existence of a reduced weekend work force is sufficient to discharge an employer's accommodation obligation under Title VII.

The City nevertheless contends that, in view of the Fifth Circuit's decision in *Bruff*, 244 F.3d at 501-02, the fact that 21 days elapsed between Ford's reassignment and termination is sufficient to discharge its statutory duty of reasonable accommodation.   The court disagrees.   In *Bruff* the Fifth Circuit

_____

[5]The City's reliance on *Brener* and *Hardison* is misplaced.   In *Hardison* the employer undertook significant and active accommodation efforts, of which its reduction in weekend work force was but one component.   In addition to a reduced weekend work force, the employer in *Hardison* adopted a seniority system that minimized the number of occasions when an employee was required to work when he would prefer to attend other needs; pledged to approve any exchange of shifts that could be arranged with the union; and offered the employee his holidays off if he would agree to work on the more common religious holidays.   *See Brener*, 671 F.2d at 144-45 (citing *Hardison*, 432 U.S. 63 at 77-78).   In *Brener*, moreover, the employer "*exceeded* the efforts of . . . [the] employer [in *Hardison*]" to accommodate the plaintiff's religious needs by deviating from established practice and experimenting with directing other employees to trade schedules with the plaintiff. *Id.* at 145.

The City's reliance on *Eversley* is also misplaced, because *Eversley* does not establish as a matter of law that the mere availability of an internal job application process satisfies an employer's duty to reasonably accommodate an employee's religious beliefs.   In *Eversley* the Fifth Circuit did not address the reasonableness of the accommodations offered by the employer.   The sole issue was whether the employer had failed to demonstrate that it would suffer undue hardship in accommodating the employee-plaintiff by requiring another employee to trade shifts with him. *Eversley*, 843 F.2d at 175.   Moreover, the fact that the employer offered to assist the employee in finding alternative employment within the company was but one of a number of steps taken by the employer, including permitting the employee to work a split shift. *Id.* at 174.

held that an employer fulfilled its statutory obligation by offering to give its employee 30 days, and the assistance of its in-house employment counselor, to help the employee find another position where the likelihood of encountering further conflicts with her religious beliefs would be reduced. *Id*. at 501.  The employee in *Bruff* was advised of available positions and of the availability of tests that might illuminate whether positions she might not otherwise consider might be of interest. *Bruff*, 244 F.3d at 502.  Here, however, the City has failed to adduce any evidence that, like the employer in *Bruff*, it offered to give Ford 30 days or offered the assistance of an employment counselor in finding a non-conflicting position.  At most, the summary judgment evidence shows that 21 days elapsed between Ford's reassignment and her termination, and that an internal job application process may have existed.  The City has thus failed to establish that this time span——either taken alone or in conjunction with the existence of an internal job application process and/or reduced weekend work force——is sufficient to satisfy its accommodation duty as a matter of law.

The City maintains that Ford cannot challenge the sufficiency of the 21-day time frame and internal job application process because she did not specifically ask to take advantage of these accommodations until the week of her discharge.  Although an employee has a correlative duty to cooperate with an employer in

achieving a reasonable accommodation, *see, e.g., Bruff*, 244 F.3d at
503 n. 24 (citing *Brener*, 671 F.2d at 145-46), in the instant case,
viewing the evidence favorably to Ford, the proof does not
establish as a matter of law that Ford failed to cooperate.   It
merely shows that she failed to request specific accommodations
other than the creation of new position, transfer to the PIN team,
or a schedule change.[6]  Moreover, Ford's alleged failure to ask for
these specific accommodations does not alter the fact that the City
has failed to establish that the accommodations were otherwise
sufficient as a matter of law.

                         *      *      *

     Accordingly, although the court does not suggest a view on the
merits of Ford's claim, it concludes that the City has not met its
summary judgment burden on a question as to which it will have the

---

[6]This is not to say that the City had an affirmative
obligation to propose a specific accommodation, and the court need
not address that question.   Even accepting *arguendo* the City's
contention that, under *Weber*, it need only show that Ford's
*suggested* accommodations would have involved undue hardship, the
City has failed to do so for reasons already given. *See Weber*, 199
F.3d at 273.

burden of proof at trial.  Accordingly, the City's October 2, 2006

motion for summary judgment is denied.

**SO ORDERED.**

July 12, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE